*Yerdon v. Poitras*

# United States Court of Appeals
## For the Second Circuit

August Term 2024

Argued:  October 31, 2024
Decided:  November 5, 2024

No. 24-1263

EDWARD A. YERDON,

*Plaintiff-Appellant*,

*v.*

KARIN POITRAS, ELIZABETH SEELOFF, NEW YORK STATE DEPARTMENT OF MOTOR
VEHICLES,

*Defendants-Appellees.*[*]

Appeal from the United States District Court
for the Northern District of New York
No. 21-cv-565, Lawrence E. Kahn, *Judge*.

Before:  KEARSE, SULLIVAN, and ROBINSON, *Circuit Judges*.

Plaintiff Edward Yerdon, proceeding *pro se*, appeals from a judgment of the
United States District Court for the Northern District of New York (Kahn, *J.*)
dismissing his claims for employment discrimination under Title I and retaliation

---

[*] The Clerk of Court is respectfully directed to amend the official case caption as set forth above.

under Title V of the Americans with Disabilities Act (the "ADA") against his former employer, the New York State Department of Motor Vehicles (the "DMV"); his former supervisor, Karin Poitras; and an employee at the Governor's Office of Employee Relations, Elizabeth Seeloff. The district court dismissed Yerdon's suit for failure to state a claim.

As a threshold matter, we must first address whether sovereign immunity bars this suit and whether the ADA permits suits against individual employees and supervisors like Poitras and Seeloff. We hold that (1) sovereign immunity bars Yerdon's Title I claims against the DMV, as well as Poitras and Seeloff in their official capacities; (2) as a matter of first impression, sovereign immunity also bars Title V retaliation claims predicated on an alleged violation of Title I; (3) Poitras and Seeloff cannot be sued in their individual capacities for retaliation because Title V does not allow for individual liability; and (4) as a matter of first impression, Title I likewise does not permit suits against individual employees like Poitras and Seeloff. Accordingly, we **AFFIRM** the judgment of the district court.

AFFIRMED.

> EDWARD A. YERDON, *pro se*, Cohoes, NY, *for Plaintiff-Appellant*.
>
> DOUGLAS E. WAGNER, Assistant Solicitor General (Barbara D. Underwood, Solicitor General, Jeffrey W. Lang, Deputy Solicitor General, *on the brief*), *for* Letitia James, Attorney General for the State of New York, Albany, NY, *for Defendants-Appellees*.

PER CURIAM:

Plaintiff Edward Yerdon, proceeding *pro se*, appeals from a judgment of the United States District Court for the Northern District of New York (Kahn, *J.*) dismissing his claims for employment discrimination under Title I and retaliation under Title V of the Americans with Disabilities Act (the "ADA") against his

former employer, the New York State Department of Motor Vehicles (the "DMV");

his former supervisor, Karin Poitras; and an employee at the Governor's Office of

Employee Relations, Elizabeth Seeloff.[1] The district court dismissed Yerdon's suit

for failure to state a claim.

As a threshold matter, we must first address whether sovereign immunity

bars this suit and whether the ADA permits suits against individual employees

and supervisors like Poitras and Seeloff. For the reasons set forth below, we hold

that (1) sovereign immunity bars Yerdon's Title I claims against the DMV, as well

as Poitras and Seeloff in their official capacities; (2) as a matter of first impression,

sovereign immunity also bars Title V retaliation claims predicated on an alleged

violation of Title I; (3) Poitras and Seeloff cannot be sued in their individual

capacities for retaliation because Title V does not allow for individual liability; and

(4) as a matter of first impression, Title I likewise does not permit suits against

individual employees like Poitras and Seeloff. Accordingly, we AFFIRM the

judgment of the district court.

---

[1] Yerdon's complaint did not assert any claims of discrimination or retaliation under New York law, so our opinion only addresses the viability of his federal-law claims.

## I.    BACKGROUND

On May 17, 2021, Yerdon filed a *pro se* complaint against the Defendants, asserting claims for employment discrimination and retaliation under the ADA. Principally, he alleged that while he was a probationary employee at the DMV, he disclosed his disability to his supervisor, Poitras, who subsequently began "treat[ing him] differently by removing tasks" and "limiting [his] responsibilities." Dist. Ct. Doc. No. 1 at 5.    According to Yerdon, Poitras gave him negative performance reviews, gave him an unspecified "ultimatum," and did not follow the work accommodation he had received. *Id.*    Finally, Yerdon alleged that he complained to Seeloff, who did not intervene on his behalf.    Ultimately, Yerdon was terminated and commenced this action.

The Defendants moved to dismiss Yerdon's complaint on the grounds that sovereign immunity under the Eleventh Amendment barred such a suit against the state and that the district court therefore lacked subject-matter jurisdiction. The Defendants further argued that the complaint failed to state a claim under the ADA because the ADA does not permit suits against individual defendants like Poitras and Seeloff and because Yerdon had not plausibly alleged the necessary components of an ADA claim.    The district court concluded that sovereign

immunity did not bar Yerdon's suit. However, the court determined that Yerdon had failed to state a claim under the ADA, reasoning that the ADA does not permit suits against individual employees and Yerdon had not adequately pleaded that he is disabled as defined in the ADA. Yerdon then appealed, arguing that he has "many times provided details of [his] disability" and thus sufficiently alleged that he was covered by the ADA. Yerdon Br. at 3. He further requested that this Court "amend the original suit and . . . permit [his] suit to focus only on the individuals," Poitras and Seeloff. *Id.*

## II. STANDARD OF REVIEW

We review a district court's grant of a motion to dismiss *de novo*, *see Costin v. Glens Falls Hosp.*, 103 F.4th 946, 952 (2d Cir. 2024), and may affirm on any basis supported by the record, even if the district court did not rely on the relevant ground, *see Citrus Mktg. Bd. of Isr. v. J. Lauritzen A/S*, 943 F.2d 220, 223 (2d Cir. 1991). In reviewing a motion to dismiss, we construe *pro se* submissions liberally to raise the strongest arguments they suggest. *See Sharikov v. Philips Med. Sys. MR, Inc.*, 103 F.4th 159, 166 (2d Cir. 2024).

## III. ELEVENTH AMENDMENT SOVEREIGN IMMUNITY

The Eleventh Amendment provides that "state governments may not be sued in federal court unless they have waived their Eleventh Amendment immunity, or unless Congress has abrogated the states' Eleventh Amendment immunity when acting pursuant to its authority under Section 5 of the Fourteenth Amendment." *Gollomp v. Spitzer*, 568 F.3d 355, 366 (2d Cir. 2009) (alterations accepted and internal quotation marks omitted). Sovereign immunity bars suits not only against the state itself but also against state officials when sued in their official capacities. *See Ford v. Reynolds*, 316 F.3d 351, 354 (2d Cir. 2003).

As recounted above, the district court concluded that the Eleventh Amendment does not protect the Defendants here from suit, but it did so under the wrong title of the ADA. Specifically, the district court analyzed the immunity question believing that Yerdon's claims arose under Title II of the ADA, which pertains to discrimination in the provision of public services. *See Noel v. N.Y.C. Taxi & Limousine Comm'n*, 687 F.3d 63, 68 (2d Cir. 2012). But this dispute involves allegations of employment discrimination, which are clearly governed by Title I of the ADA. *See Mary Jo C. v. N.Y. State & Loc. Ret. Sys.*, 707 F.3d 144, 169–71 (2d Cir. 2013) (explaining that the ADA "unambiguously limits employment

6

discrimination claims to Title I"). And it is well-established that Congress has not validly abrogated the states' sovereign immunity for claims arising under Title I. *See Bd. of Trs. of Univ. of Ala. v. Garrett*, 531 U.S. 356, 360 (2001). Nor has New York waived its immunity.[2] We therefore conclude that sovereign immunity bars Yerdon's Title I claims against the DMV.

In addition to his Title I claims, Yerdon asserts claims for retaliation, which arise under Title V of the ADA. We have not yet addressed whether Congress has validly abrogated the states' sovereign immunity for Title V claims. We must therefore ask (1) "whether Congress unequivocally expressed its intent to abrogate [sovereign] immunity" for retaliation claims and, if so, (2) "whether Congress acted pursuant to a valid grant of constitutional authority." *Kimel v. Fla. Bd. of Regents*, 528 U.S. 62, 73 (2000). Because Congress has clearly expressed its intention to abrogate state sovereign immunity for all claims under the ADA, *see* 42 U.S.C. § 12202 ("A [s]tate shall not be immune under the [E]leventh [A]mendment to the Constitution of the United States from an action in [f]ederal or [s]tate court of competent jurisdiction for a violation of this chapter."), we must focus our attention on the second question.

---

[2] We recognized this in our nonprecedential decision in *Nicolae v. Office of Vocational & Educational Services for Individuals with Disabilities*, 257 F. App'x 455, 457 (2d Cir. 2007).

As the Supreme Court has explained, "Congress may not . . . base its abrogation of the [s]tates' Eleventh Amendment immunity upon the powers enumerated in Article I." *Garrett*, 531 U.S. at 364. Instead, it must rely on its enforcement powers under section 5 of the Fourteenth Amendment. *See id.* Congress's exercise of its section 5 enforcement powers must, in turn, exhibit "congruence and proportionality between the injury to be prevented or remedied and the means adopted to that end." *City of Boerne v. Flores*, 521 U.S. 507, 520 (1997). As a result, we must determine, *inter alia*, "whether Congress identified a history and pattern of unconstitutional . . . discrimination by the [s]tates." *Garrett*, 531 U.S. at 368.

The Supreme Court has already instructed us that "[t]he legislative record of the ADA . . . simply fails to show that Congress . . . identif[ied] a pattern of irrational state discrimination in employment against the disabled." *Id.* Likewise, "Congress's legislative findings do not reveal a history of the [s]tates retaliating against their employees for opposing disability discrimination." *Stanley v. W. Mich. Univ.*, 105 F.4th 856, 866 (6th Cir. 2024); *see* 42 U.S.C. § 12101(a). Nor do the congressional committee reports "discuss employment retaliation based on opposing disability discrimination in the public sector." *Stanley*, 105 F.4th at 866.

Because Congress did not identify a history and pattern of retaliation by states against their employees who challenge discrimination against the disabled, Congress did not have the constitutional authority to abrogate the states' sovereign immunity for ADA retaliation claims, at least to the extent those claims are predicated on an alleged violation of Title I of the ADA.[3] Indeed, if "the underlying provision – here, Title I – does not allow a plaintiff to assert a claim against the [s]tate, it logically follows that a Title V claim that is based on the exercise of a right arising only from Title I cannot be levied against the [s]tate." *Dupree v. Owens*, 92 F.4th 999, 1007 (11th Cir. 2024).

In reaching this holding, we join every other circuit that has pronounced on this issue, *see Stanley*, 105 F.4th at 866; *Dupree*, 92 F.4th at 1007; *Block v. Tex. Bd. of L. Exam'rs*, 952 F.3d 613, 619 (5th Cir. 2020); *Demshki v. Monteith*, 255 F.3d 986, 988–89 (9th Cir. 2001), and affirm the long-standing and universal consensus of district courts in this circuit, *see, e.g.*, *Padilla v. N.Y. State Dep't of Lab.*, No. 09-cv-5291 (CM),

---

[3] Our holding today does not address whether Congress validly abrogated the states' sovereign immunity for Title V retaliation claims predicated on alleged violations of other titles of the ADA. For example, Congress has validly abrogated sovereign immunity for at least some violations of Title II of the ADA where fundamental rights are implicated. *See Tennessee v. Lane*, 541 U.S. 509, 530 (2004). Therefore, a Title V claim premised on certain violations of Title II might not be barred by sovereign immunity. *See Block v. Tex. Bd. of L. Exam'rs*, 952 F.3d 613, 619 (5th Cir. 2020) ("[A] plaintiff may bring a [Title V] retaliation claim against a state entity only to the extent that the underlying claim of discrimination effectively abrogates sovereign immunity of the particular state."). However, we leave that question, which is not before us, for another day.

2010 WL 3835182, at *4 (S.D.N.Y. Sept. 13, 2010) ("[E]very district court in this Circuit to consider the issue has concluded that sovereign immunity bars Title V claims."); *Quadir v. N.Y. State Dep't of Lab.*, 39 F. Supp. 3d 528, 536 (S.D.N.Y. 2014) ("[D]istrict courts within this Circuit have consistently extended *Garrett*'s holding to ADA Title V retaliation claims – at least to the extent that those claims are predicated on ADA Title I discrimination claims."); *Chiesa v. N.Y. State Dep't of Lab.*, 638 F. Supp. 2d 316, 323 (N.D.N.Y. 2009) ("If a state is immune from underlying discrimination, then it follows that the state must be immune from claims alleging retaliation for protesting against discrimination."); *Davis v. Vt., Dep't of Corr.*, 868 F. Supp. 2d 313, 322 (D. Vt. 2012) ("[T]he district courts in the Second Circuit that have addressed the issue have all concluded that Title V claims are barred by the Eleventh Amendment."); *Emmons v. City Univ. of N.Y.*, 715 F. Supp. 2d 394, 408 (E.D.N.Y. 2010); *Murray v. Tanea*, 357 F. Supp. 3d 226, 231 (W.D.N.Y. 2019).

In addition to his claims against the DMV, Yerdon has asserted claims against two state officials, Poitras and Seeloff. It is unclear whether Yerdon intended to file those claims against Poitras and Seeloff in their individual or official capacities, but to the extent these claims are asserted against Poitras and

10

Seeloff in their official capacities, they are also barred by sovereign immunity. *See Ford*, 316 F.3d at 354 (holding that sovereign immunity bars suits against state officials when sued in their official capacities).

## IV.   INDIVIDUAL LIABILITY

We also must address whether Yerdon can maintain his discrimination and retaliation claims against Poitras and Seeloff in their individual capacities. We have previously held that individual employees cannot be held liable under the ADA's retaliation provisions, which disposes of Yerdon's Title V claims against Poitras and Seeloff. *See Spiegel v. Schulmann*, 604 F.3d 72, 79–80 (2d Cir. 2010). With respect to Title I, we have suggested in nonprecedential summary orders that "the ADA . . . do[es] not provide for actions against individual supervisors," *Darcy v. Lippman*, 356 F. App'x 434, 437 (2d Cir. 2009); *see also Iwelu v. N.Y. State Off. of Mental Health*, No. 22-3096, 2024 WL 2175938, at *2 n.5 (2d Cir. May 15, 2024) ("[T]here is no individual liability under [the ADA]."), but we have not squarely addressed this question in a precedential opinion. We do so here today and hold that Title I does not permit plaintiffs to bring damages claims against individual employees.

"When interpreting a statute, we begin with the text." *Pfizer, Inc. v. U.S. Dep't of Health & Hum. Servs.*, 42 F.4th 67, 73 (2d Cir. 2022) (alterations accepted and internal quotation marks omitted). Section 12112 limits the scope of Title I's coverage to "covered entit[ies]," which are prohibited from "discriminat[ing] against a qualified individual on the basis of disability." Section 12111(2) defines "covered entity" to include only "an employer, employment agency, labor organization, or joint labor-management committee." And "employer" refers to "a person engaged in an industry affecting commerce who has 15 or more employees . . . and any agent of such person." 42 U.S.C. § 12111(5)(A).

Despite the statute's reference to "any agent of such person," we have held that a nearly identical definition of employer used in Title VII of the Civil Rights Act does not impose individual liability. *See Tomka v. Seiler Corp.*, 66 F.3d 1295, 1313–17 (2d Cir. 1995). We explained that because "Congress intended to limit liability to employer-entities with fifteen or more employees" and thus spare small entities from the costs associated with litigating discrimination claims, it would make little sense to read the statute as simultaneously permitting suits against individual employees. *Id.* at 1314. Moreover, when Title VII was first enacted, the only available remedies were reinstatement and backpay, which "are most

12

appropriately provided by employers, defined in the traditional sense of the word," and not by individual employees. *Id.* Even though Congress subsequently amended Title VII in 1991 to permit compensatory and punitive damages, it calibrated the amount of damages to the size of the employer, and none of the provisions addressed the calculation of damage awards against individuals. *See id.* at 1315. Accordingly, "it appears that Congress contemplated that only employer-entities could be held liable for compensatory and punitive damages, because if Congress had envisioned individual liability it would have included individuals in th[e] litany of limitations and discontinued the exemption for small employers." *Id.* (alterations accepted and internal quotation marks omitted). We also noted that individual liability under Title VII could lead to inequitable outcomes – for example, an individual employee could be left holding the bag if the employer were to declare bankruptcy. *See id.* at 1315–16. Given that the statutory language and 1991 amendments are identical for Title VII and Title I, we believe that the reasoning we set forth in *Tomka* applies with equal force to Title I.

Perhaps not surprisingly, at least six of our sister circuits have reached the same conclusion – that Title I does not permit suits against individual employees. *See Román-Oliveras v. P.R. Elec. Power Auth.*, 655 F.3d 43, 51–52 (1st Cir. 2011) ("We

. . . agree with the virtually universal view that Title I of the ADA . . . addresses the conduct of employers only and does not impose liability on co-workers." (internal quotation marks omitted)); *Sullivan v. River Valley Sch. Dist.*, 197 F.3d 804, 808 n.1 (6th Cir. 1999); *EEOC v. AIC Sec. Investigations, Ltd.*, 55 F.3d 1276, 1282 (7th Cir. 1995); *Walsh v. Nev. Dep't of Hum. Res.*, 471 F.3d 1033, 1037–38 (9th Cir. 2006); *Butler v. City of Prairie Vill.*, 172 F.3d 736, 744 (10th Cir. 1999); *Albra v. Advan, Inc.*, 490 F.3d 826, 830 (11th Cir. 2007). District courts in this circuit have likewise consistently concluded that Title I does not permit individual liability. *See, e.g.*, *Murray*, 357 F. Supp. 3d at 230; *Myers v. N.Y. Dep't of Motor Vehicles*, No. 06-cv-4583 (NG), 2013 WL 3990770, at *9 (E.D.N.Y. Aug. 5, 2013) ("[N]umerous district courts in this circuit have persuasively held that there is no individual liability under Title I . . . of the ADA."); *Sutherland v. N.Y. State Dep't of L.*, No. 96-cv-6935 (JFK), 1999 WL 314186, at *7 (S.D.N.Y. May 19, 1999) (collecting cases); *Arcuri v. Schoch*, No. 15-cv-798 (DNH), 2015 WL 5652336, at *5 (N.D.N.Y. Sept. 24, 2015) ("[M]any district courts in this circuit, as well as other circuit courts, have held that individual defendants may not be held personally liable for alleged violations of Title I of the ADA."); *Credle-Brown v. Connecticut*, 502 F. Supp. 2d 292, 298 (D. Conn.

14

2007); *Boyens v Anderson*, No. 20-cv-93 (WKS), 2021 WL 5580055, at \*2 (D. Vt. Nov. 30, 2021).  Indeed, we have not come across a single court that has held otherwise.

Today, we join this consensus and hold that Title I does not permit suits against individual employees.  We therefore affirm the dismissal of Yerdon's employment-discrimination claims against Poitras and Seeloff in their individual capacities.

## V.    LEAVE TO AMEND

For the first time on appeal, Yerdon argues that he should be given the opportunity to amend his complaint to assert claims against Poitras and Seeloff only.  However, as described above, neither Title I nor Title V of the ADA permits claims against individual employees, and sovereign immunity bars such claims against state officials in their official capacities.  As a result, granting leave to amend here would be futile and is not warranted.  *See Cuoco v. Moritsugu*, 222 F.3d 99, 112 (2d Cir. 2000).

## VI.    CONCLUSION

We have considered Yerdon's remaining arguments and find them to be without merit.  Accordingly, we **AFFIRM** the judgment of the district court.